[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
The Coventry Fire District ("CFD") brings this action against Leon Blais and John Doe No. 1-10 ("Defendants") seeking to have declared invalid certain actions allegedly taken by the Board of Engineers of CFD on June 23, 2004 ("June 23 meeting"). CFD contends that the June 23 meeting was improperly called and that any action taken at that meeting is void. The Defendants reject that contention and argue that the true attorney of record for CFD, by virtue of the June 23 meeting, is Sara Quinn, Esquire, and this action is improperly brought on behalf of CFD.
CFD seeks a preliminary injunction for the purpose of essentially restoring the status quo prior to the June 23 meeting. A hearing was conducted by this Court on July 12 and 15, 2004. Thereafter, the parties submitted memoranda of law.
The principal figures in the controversy are Stanley Mruk, Chief Engineer of CFD, and Assistant Chief Engineers Robert Warren and Joseph Hartman. These three individuals comprise the Board of Engineers. Warren and Hartman called the June 23 meeting. Mruk did not convene the meeting and did not attend the same. At the June 23 meeting, resolutions were adopted to remove any attorney previously retained by CFD, and to engage Sara Quinn, Esquire as counsel for CFD. A resolution was also adopted to conduct a fraud and compliance examination, so-called, of the affairs of CFD, pursuant to which defendant Leon Blais was engaged by Attorney Quinn to perform the same. As a result of the examination then undertaken, Chief Mruk for a period of time was locked out of his office and others in the employ of CFD were disrupted in certain respects from their normal work routine. The record evidence also firmly establishes that there are significant disagreements between Mruk and his Assistant Chiefs with respect to the operation of CFD.
The central issue that must be resolved in the context of this preliminary injunction hearing is whether the June 23 meeting was improperly called and whether the resolutions adopted at said meeting are invalid. That issue must be addressed in the context of the standards which this Court must follow in conducting a hearing on a preliminary injunction. In deciding whether to issue a preliminary injunction, this Court should determine whether the moving party:
 "(1) has a reasonable likelihood of success on the merits, (2) will suffer irreparable harm without the requested injunctive relief, (3) has the balance of the equities, including the possible hardships to each party and to the public interest, tip in its favor, and (4) has shown that the issuance of a preliminary injunction will preserve the status quo." Iggy's Doughboys, Inc. v. Giroux, 729 A.2d 701, 705
(R.I. 1999).
The CFD by-laws unequivocally provide that Chief Mruk is vested with the authority to convene meetings of the Board of Engineers. The pertinent provisions specifically state that the "Board of Engineers may hold regular meetings and other special meetings at the call of the Chief Engineer." By-laws Art III § 2. In this case, there is no dispute that Chief Mruk did not call the June 23 meeting. Thus, the evidence is clear that the June 23 meeting was not properly convened because Chief Mruk did not call it.
The Defendants argue that the Chief Engineer could not refuse to call such meeting. They rely on the authority contained in Nolan v.Representative Council of City of Newport, 73 R.I. 498, 57 A.2d 730
(1948). That holding, however, has no application to the facts of this case. In Nolan, the Attorney General sought a writ of mandamus to compel a city council to fill a vacancy in a municipal office. Rather than calling an election, the council designated its head to fill the vacancy. The Supreme Court held, despite the "may call" discretionary language in the applicable statute, the council had an affirmative duty to call an election. The Court therefore granted the petition for a writ of mandamus and ordered the Council to schedule a special election to fill the vacancy. Id. 57 A.2d at 735.
In this case, the evidence demonstrates that the Board of Engineers regularly held meetings. For instance, just prior to the disputed meeting, meetings were held on May 26, 2004, April 14, 2004 and March 1, 2004. There is no evidence to suggest that Chief Mruk failed to call meetings with sufficient regularity to conduct business that would properly be considered by the board. Assistant Chiefs Warren and Hartman also testified that they had never before asked Chief Mruk to call a meeting of the Board of Engineers. Nolan has no application when viewed in the context of these facts. This Court will not speculate what legal recourse the other Board members might have if the Chief Engineer refuses to convene Board meetings from time to time, because the issue is not before this Court for resolution based on the record evidence. In view of the Court's finding that the June 23 meeting was improper, it is not necessary to determine whether the meeting violated the Rhode Island Open Meetings Act. Furthermore, it is unnecessary to address whether the Board of Engineers has the authority to adopt the resolutions at issue, assuming a meeting was properly convened.
In summary, the Court finds that the June 23 meeting was improperly called. When a public body does not follow procedures established for it to take action, an action which it purportedly takes is void. ProvidenceTeachers Union v. Providence Sch. Bd., 689 A.2d 384, 388 (R.I. 1996). Accordingly, the resolutions adopted at the June 23 meeting are void ab initio.[1]
The Defendants also contend that Chief Mruk does not properly hold the office of Chief Engineer. The record is devoid of any evidence to substantiate that claim. To the contrary, the evidence does establish that Chief Mruk was elected to such position in 1961 and that pursuant to the Act and Resolves of the General Assembly, as amended, relating to CFD that he continues to hold such office until a successor is elected. See Acts and Resolves of General Assembly, January Session, 1889, "An Act to Incorporate the Coventry Fire District" ch. 806 § 4 and Act and Resolves of the General Assembly, January Session 1925, "An Act to Incorporate the Coventry Fire District" ch. 806 § 15. There is no evidence that any person has subsequently been elected. In fact, the officers of CFD, including the Chief Engineer, can potentially be replaced and/or elected at annual or special meetings of the District. Perhaps, the dispute between Chief Mruk and his Assistant Chiefs can best be resolved at an annual or special meeting of the district. That matter, however, is not for this Court to decide.
Thus, CFD has clearly proven the likelihood of success on the merits. The preliminary hearing clearly establishes that the Board meeting was improperly convened and that all actions taken at said meeting are void ab initio. In light of that finding, it is equally clear to this Court that CFD does and will continue to suffer irreparable harm, if the actions taken pursuant to the resolutions are allowed to persist. CFD has a clear interest in ensuring that the day to day operations of the fire department function smoothly. Moreover, CFD has a significant interest in ensuring that only authorized personnel have access to its offices and are engaged to perform services for it. The Chief Engineer of the district clearly had the authority to act to contravene an improper Board meeting and actions taken incident thereto. The balancing of equities in this case clearly warrant that the status quo, as it existed prior to the improperly called meeting, be restored at the earliest moment.
Accordingly, a preliminary injunction should and hereby does issue. The attorney retained at the June 23 meeting, the examiner hired by her, and any other agent duly engaged by either of them are hereby:
 (1) ordered to return all papers, documents, and other personal property obtained from CFD from June 23 to the present;
 (2) ordered to return all copies of any papers and documents as above noted; and
 (3) ordered to return all notes taken regarding any such papers, documents, and other personal property, including copies of such notes.
Counsel are directed to prepare an Order consistent with this Decision.
[1] The Court also notes that no evidence of fraud has been presented. If there is any such evidence of misconduct, it can be presented to the Department of Attorney General and/or the State Police Financial Crimes Unit.